# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| LISA R. WRIGHT, <br><br> *Plaintiff,* <br><br> v. <br><br> PARKER-HANNIFIN CORPORATION, <br><br> *Defendant.* | CASE NO. 6:16-CV-00044 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant's motion to dismiss and Plaintiff's motion for extension of time to file a motion to amend her complaint. Plaintiff brings several causes of action related to her poor treatment at work and subsequent termination. She alleges these adverse actions were related to a workplace injury she suffered. Specifically, Plaintiff brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., as amended; Virginia Code § 65.2-308 (1950), as amended; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*. Defendant has moved to dismiss all claims, arguing that Plaintiff has not administratively exhausted her ADA claim, and that she has failed to adequately plead any of her claims.

Plaintiff has failed to exhaust her ADA claim. Thus, this Court lacks jurisdiction to adjudicate its merits and it will be dismissed. Plaintiff has also failed to state a claim under Virginia Code § 65.2-308 because she has not alleged facts making it plausible that she was terminated due to her attempt to obtain workers' compensation. However, Plaintiff's FMLA retaliation claim was adequately pled, and it will be allowed to proceed. Accordingly, Defendant's motion to dismiss will be granted in part and denied in part. Plaintiff's motion for

1

extension of time to file an amended complaint will be granted, and Plaintiff will have fourteen (14) days in which to petition this Court for leave to amend her complaint.

## I. Statement of the Facts

Plaintiff was employed by Defendant for over twenty years, from approximately January 20, 1995, to April 4, 2016. (Dkt. 1 at ¶ 9). On June 3, 2015, Plaintiff fell and hit her head at work, resulting in a "concussion, severe headaches, neck injury, marked pain and loss of use and functionality of her right arm, and other symptoms." (*Id.* at ¶ 10). Subsequently, she had two medical procedures to address her symptoms, in October 2015 and February 2016, that forced her to miss work for approximately two weeks each time. (*Id.* at ¶ 12). Plaintiff also missed work on several other instances due to her injury, but always provided appropriate documentation of her medical reasons pursuant to the FMLA. (*Id.* at ¶ 13). Plaintiff also pursued a workers' compensation claim related to her injuries. (*Id.* at ¶ 14).

As a result of Plaintiff taking medical leave and seeking workers' compensation, Plaintiff's supervisor, Betty Parrish, began to harass Plaintiff at work, including refusing to accept her legitimate medical excuses. (*Id.* at ¶ 14). On November 12, 2015, Parrish terminated from her job, but reinstated her two hours later. (*Id.* at ¶¶ 14, 15). Plaintiff submitted a form from one of her health care providers on December 16, 2015, that notified her employer of her need to take intermittent FMLA medical leave. (*Id.* at ¶ 16). After submitting this form, Plaintiff faced increased harassment and was subjected to wrongful disciplinary write-ups. (*Id.* at ¶ 17). On April 4, 2016, Plaintiff was terminated from her position again. (*Id.* at ¶ 18).

## II. Standard of Review

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708

2

F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III. Discussion

#### a. ADA

A threshold issue is whether Plaintiff has administratively exhausted her ADA claim. This Court lacks jurisdiction to hear her claim if she has not. *See Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). Generally, a claim may be exhausted by first bringing it in an Equal Employment Opportunity Commission ("EEOC") charge prior to asserting it in a lawsuit. *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000). Defendant claims that Plaintiff has not exhausted her ADA claim because she failed in her EEOC charge to describe an ADA claim or to check the box indicating she wished to bring an ADA claim. Plaintiff argues that her *pro se* EEOC charge, liberally construed, was reasonably related to her ADA claim, and that the content of her EEOC intake questionnaire makes it clear that she was attempting to bring a claim related to the ADA.

Plaintiff is correct that her *pro se* EEOC charge must be construed liberally, and that her failure to check the box indicating she wished to bring an ADA claim is not dispositive on

3

whether she exhausted her claim. *See Williams v. Mancom, Inc.*, 323 F. Supp. 2d 693, 695 (E.D. Va. 2004) ("EEOC complaints filed by individuals acting without the assistance of an attorney are not so strictly construed that a failure to check the 'Retaliation' box on the EEOC charge form is necessarily fatal to the later assertion of a retaliation claim."). Instead, a claim should be considered exhausted if "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith*, 202 F.3d at 247.

However, Plaintiff's charge and ADA claim were not reasonably related. Even for unrepresented charges, "we are not at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). Here, there is simply a lack of facts implicating an ADA claim or intent by Plaintiff to bring an ADA claim. The only conceivable reference to the ADA in the EEOC charge is the fact that Plaintiff stated that the decision to fire her "result[ed] from my workplace injury in June 2015." (*See* dkt.7-1 at 2). However, the charge also describes an entirely different basis for her claim, stating that Plaintiff was terminated "based on retaliation for participating in a protected activity." Thus, the lone statement that her claim was "resulting" from her workplace injury is insufficient to implicate an ADA claim, particularly when the charge was inconsistent with an ADA claim in multiple other places (failure to check the correct box, statement that her claim was based on retaliation).

Without any other indication of an ADA claim, the charge and complaint are not "reasonably related," and there is no way to "'ensure[] that the employer is put on notice of the alleged violations' thereby giving it a chance to address the alleged discrimination prior to litigation." *Sydnor*, 681 F.3d at 594 (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir.

4

2005)). *See also id*. ("The goals of providing notice and an opportunity for an agency response would be undermined, however, if a plaintiff could raise claims in litigation that did not appear in his EEOC charge."). Further, failure to check the correct box, while not fatal, does factor into evaluating whether a claim is exhausted. *See Miles,* 429 F.3d at 492 (finding a retaliation claim was not exhausted when the Plaintiff "did not check the retaliation box on her charge, and the narrative explaining her charge made no mention of retaliation"). Thus, even construing the EEOC favorably for Plaintiff, it does not contain sufficient indication that Plaintiff intended to implicate the ADA.

Plaintiff also cites *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) for the proposition that "an administrative charge of discrimination does not strictly limit the Title VII suits which may follow." However, *Chisholm* merely serves to illustrate the significant differences between Plaintiff's charge and complaint in comparison to other, similar controversies. The differences between the EEOC charge and complaint in *Chisholm* was relatively minor, and did not include trying to bring type of claim not contained in the charge *at all*, as Plaintiff attempts to do here. *See Chisholm*, 665 F.2d at 491 (difference between alleging "discrimination in promotions" in the charge and challenging the "entire promotional system" in the complaint); *see also Sydnor*, 681 F.3d at 594 (failure to mention in her EEOC charge the reasonable accommodation argued at summary judgment, but both still related to an ADA claim); *Smith*, 202 F.3d at 248 (different retaliatory conduct in the charge and complaint, although by the same actor). Here, by contrast, the difference between the complaint and the EEOC charge is the bringing of an entirely different type of claim in the complaint, rather than just a factual difference within the same type of claim. Fourth Circuit case law makes clear that "[t]he plaintiff's claim generally will be barred if his charge alleges discrimination on one

5

basis . . . and he introduces another basis in formal litigation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005); *see also Sydnor*, 681 F.3d at 593–94 ("We have therefore not found exhaustion where a charge alleges only racial discrimination but the complaint includes sex discrimination, or where a charge alleges only retaliation but the complaint alleges racial discrimination as well.") (internal citations omitted). Thus, Plaintiff's attempt to bring a categorically different type of claim cannot be permitted.

Plaintiff's other argument — that the Court should consider the contents of her EEOC intake questionnaire in determining the scope of the charge — is directly contradicted by Fourth Circuit law. In *Balas v. Huntington Ingalls Industries*, the Fourth Circuit held that "[i]n determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency." *Balas*, 711 F.3d at 408; s*ee also id*. ("The intake questionnaire and the letters *Balas* submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII."). Thus, binding precedent dictates that this Court may not look to the contents of the EEOC questionnaire in determining whether Plaintiff brought an ADA claim in her charge. Further, even if the Court were to consider the contents of Plaintiff's EEOC questionnaire, it does not necessarily indicate that she brought an ADA claim before the EEOC. On her intake questionnaire, Plaintiff checked a box to indicate that "I want to talk to an EEOC employee before deciding whether to pursue a charge." (Dkt. 11-1 at ECF 3). Thus, the most accurate representation of the claim that Plaintiff asked the EEOC to investigate is the actual charge that was produced after the requested consultation with an EEOC employee.

An ADA complaint must be reasonably related to a prior EEOC charge in order for this Court to have jurisdiction to hear it. Here, that relationship did not exist. Plaintiff's attempts to

circumvent the obvious shortcomings of her EEOC charge are unpersuasive. While Plaintiff was unrepresented when she filed her EEOC charge, leniency in a *pro se* submission does not give this Court jurisdiction to hear claims that were not raised at all in the EEOC charge. Plaintiff's failure to check the box to bring an ADA claim is further evidence that her EEOC charge was lacking in this respect. Finally, this Court may not consider the contents of her EEOC questionnaire, but must look instead only to the EEOC charge itself. Considering these factors, the Court concludes that Plaintiff has failed to administratively exhaust her ADA claim by bringing it in a prior EEOC charge. Thus, the Court lacks jurisdiction to hear this claim and Defendant's motion to dismiss Plaintiff's ADA claim will be **GRANTED**.

### b. Virginia Code § 65.2-308

Under Virginia Code § 65.2-308(a), "No employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title or has testified or is about to testify in any proceeding under this title." Plaintiff's only factual allusion to workers' compensation comes when she alleges that Defendant refused to accept her doctors' notes and harassed her, "particularly after plaintiff hired an attorney to help with the workers' compensation claim, to the point that on November 12, 2015, Parrish terminated plaintiff's employment for the first time." (Dkt. 1 at ¶ 14). Taking into account this statement and Plaintiff's complaint as a whole, however, the complaint does not rise to the level of successfully pleading a § 65.2-308 claim.

The § 65.2-308 claim fails because there are not sufficient facts to give rise to the inference that the termination occurred because of the referenced workers' compensation claim. After referencing workers compensation briefly in paragraph 14, Plaintiff discusses several other, seemingly unrelated, intervening events and potential causes of her discharge before

7

alleging the final discharge in paragraph 18. Additionally, the workers compensation claim appears to have occurred sometime prior to November of 2015, while the termination occurred in April of 2016 — only after the alleged occurrence of several instances of FMLA leave and subsequent retaliation.

There is no attempt to explicitly connect the two events causally, but merely the assertion of the presence of a workers' compensation claim and a termination in the same complaint. The complaint also lacks sufficient detail regarding the workers' compensation claim, such as when it was filed, which parties were aware of it, or any negative reactions specifically to the filing of the claim. In essence, the complaint only alleges the presence of a workers' compensation claim and Plaintiff's termination, but not the necessary factual details linking one to the other. Taking all the facts in the complaint as true, Plaintiff does not allege facts making it plausible that she was terminated "solely because" of her filing of a workers' compensation claim. *See* Va. Code § 65.2-308 Thus, Plaintiff has failed to state a claim under Virginia Code § 65.2-308 and Defendant's motion to dismiss on this count will be **GRANTED**.

    c. **FMLA**

The parties disagree over the correct standard to which a pleading under the FMLA is held.[1] Plaintiff asserts that Defendant is incorrectly arguing that she is required to plead a full *prima facie* case under the *McDonnell Douglas* framework, citing *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). *See id.* ("[A] plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss."). Defendant attempts to clarify that it is not arguing that Plaintiff should

---

[1] There was also some controversy in the briefs about whether Plaintiff was attempting to bring an FMLA interference or FMLA retaliation claim. However, it was clarified both during briefing and at oral argument that Plaintiff attempts to bring only an FMLA retaliation claim.

plead the elements of the *prima facie* case, but merely that she must asserts facts constituting a violation of the FMLA. Regardless of the disposition of this particular argument, the standard to which Plaintiff's pleading is held is the same as any other pleading under *Twombly* and *Iqbal*. Thus, her pleading "must contain sufficient factual matter, accepted as true" to state a claim under the FMLA, as established by applicable statutes and precedent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Plaintiff attempts to bring FMLA retaliation claims under 29 U.S.C. § 2615(a)(2), which reads: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Although the statute does not explicitly mention retaliation, it has been interpreted to encompass it. *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294–95 (4th Cir. 2009) ("Courts have recognized that the FMLA provides a cause of action for retaliation."). To state a claim for FMLA retaliation, a plaintiff must plausibly allege "[1] that he engaged in protected activity, [2] that the employer took adverse action against him, and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

The protected activity alleged in the complaint is Plaintiff's taking of FMLA medical leave due to injuries suffered after a fall at work. (*See* dkt. 1 at ¶¶ 10, 12, 13, 16, 21). The complaint also clearly contains the adverse action of Plaintiff's termination. (*Id.* at ¶, 18). The disagreement between the parties, therefore, is whether the complaint adequately pleads facts to support the third prong, a causal connection between the protected activity and adverse employment action. An inquiry into the wording of the complaint is necessary to resolve this dispute.

9

With respect to the first termination and harassment, Plaintiff alleges that Defendant "refused to accept the doctors' notes and otherwise harassed Plaintiff . . . *for* seeking medical treatment . . . *to the point* that [Defendant] terminated plaintiff's employment for the first time." (Dkt. 1 at ¶14 (emphasis added)). Thus, Plaintiff states that the harassment and earlier termination occurred *because of* Plaintiff's medical treatment.[2] Plaintiff also claims that harassment got worse and wrongful write-ups occurred after she submitted paperwork documenting her need for FMLA leave, again evincing the clear meaning that these actions occurred *because* she tried to assert her FMLA rights. (Id. at ¶ 16). In the sentence immediately following, Plaintiff alleges that "[t]hen" she was terminated, indicating that the termination was connected to the previously mentioned FMLA paperwork and write-ups. (Id. at ¶ 17).

A court is obligated to make reasonable inferences in favor of a plaintiff when interpreting a complaint. *Iqbal*, 556 U.S. at 678. It is reasonable here to infer that the termination was not alleged as an unconnected event, but instead was related to the first termination, ongoing harassment, and write-ups resulting from her taking of FMLA leave. These allegations of earlier harassment and termination connected to Plaintiff's exercise of FMLA rights provide factual support, making Plaintiff's claim plausible. Even if Plaintiff's complaint is not perfect, it does not take unreasonable inferential leaps to see that she is alleging that her termination occurred because of her attempted and actual exercise of her FMLA rights. Thus, Plaintiff has adequately stated a claim for FMLA retaliation, and Defendant's motion as to this claim will be **DENIED**.

IV. **Conclusion**

Plaintiff brings three claims; two of them will be dismissed. Plaintiff's ADA claim has not been administratively exhausted, and thus this Court lacks jurisdiction to hear it. Plaintiff's

---

2     In the preceding sentence, Plaintiff notes that the same "medical treatment" caused her to miss work "pursuant to the FMLA," thus implicating it as a protected activity. (Dkt. 1 at 13).

10

claim under Virginia Code § 65.2-308 is not adequately pled and will be dismissed. However, Plaintiff does sufficiently plead a claim for FMLA retaliation and that claim will be allowed to proceed. Thus, Defendant's motion to dismiss will be **GRANTED** with respect to Plaintiff's ADA and Virginia Code § 65.2-308 claims, and **DENIED** with respect to Plaintiff's FMLA claim. Finally, Plaintiff's motion for extension of time to file motion to amend complaint will be **GRANTED**, and Plaintiff may seek leave to file an amended complaint within fourteen (14) days. An appropriate order will issue.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this __19th__ day of January, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE